(72 South. 953)

No. 22199.

HYMAN v. SUCCESSION OF PARKERSON.

(Nov. 13, 1916.)

*(Syllabus by the Court.)*

BILLS AND NOTES  92(1)—REQUISITES AND VALIDITY—CONSIDERATION.

 Where in a suit by the payee and holder of promissory notes, issued on their face "for value received," instituted against the legal representatives of the deceased maker, the defendants pleaded want of consideration, *held*, that a valuable consideration was proved by evidence showing that the maker, a prominent attorney, acting as the adviser and agent of the plaintiff, had unwittingly invested her money in forged mortgage notes, certified to be genuine by a certain notary public, and who, on the discovery of the forgery, had substituted his own notes for the forged notes, stating at the same time to the plaintiff that he was in fault for not exercising more care in the investment of her money.

 [Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 166, 201–203; Dec. Dig.  92(1).]

Appeal from Civil District Court, Parish of Orleans; George H. Théard, Judge.

Action by Mrs. Thomas McC. Hyman against the succession of William S. Parkerson. From a judgment for plaintiff, defendant appeals. Affirmed.

Merrick, Gensler & Schwarz, of New Orleans, for appellant. Walter S. Lewis, of New Orleans, for appellee.

LAND, J. The plaintiff sued as payee and holder of two promissory notes executed and signed by the decedent on August 9 and 16, 1913, respectively; one for $2,100, and the other for $3,500, and both bearing interest at the rate of 6 per cent. per annum from date.

The petition alleges payment of interest on the first note up to August 9, 1915, and on the second note up to August 16, 1914. Both notes recite that they were given for "value received."

The widow and testamentary executor of the deceased in her answer admitted that the plaintiff was the owner and holder of the said notes executed by the late William S. Parkerson, but denied that the plaintiff gave valuable consideration therefor.

The defendant for further answer recited the circumstances under which the said notes were given, which may be briefly stated as follows:

The decedent as plaintiff's agent invested $5,600 of her money in three promissory notes, two purporting to have been signed by one Kate Regan Gardner, and the third by one John Reilly, the two first purporting to be secured by first mortgage and vendor's lien, and the third by first mortgage, on certain pieces of real estate in the city of New Orleans, as per acts of even date therewith passed before James J. Woulfe, late notary public. That upon the defalcation and exposure of the said Woulfe it developed that the said William S. Parkerson had been imposed upon and defrauded, and that the said notes so purchased for plaintiff from the said Woulfe were forgeries and worthless.

That the said Parkerson thereafter gave the plaintiff his own personal notes (those sued on) for amounts equal to the amounts of the forged notes bought from the said Woulfe.

That the said Parkerson was not responsible for the loss suffered by the plaintiff,

"having exercised all care and diligence that he was bound to exercise in making the said investment, and that the giving of his own notes for the amount thereof was a pure gratuity on his part, and was done solely out of his generosity and the desire to spare petitioner the loss which she would have otherwise suffered, and that the said notes so given by the said William S. Parkerson are without consideration and void."

The answer admits that Parkerson during his lifetime paid the interest on said notes, and took back from the plaintiff the said forged mortgage notes, and made a claim thereon in the concursus proceedings instituted by the surety on the notarial bond of the said Woulfe, and also filed a proof of debt in the matter, "In re James J. Woulfe, Bankrupt," in the United States District Court.

The answer further avers that there may be a small dividend declared in the concursus proceeding, which when received will be tendered by the defendant to the plaintiff.

The answer contains a reconventional demand for $126 for interest paid to the plaintiff by the defendant on certain conditions, which it is alleged were violated by the plaintiff.

The case was tried, and there was judgment for the plaintiff as prayed for, and against the defendant on her reconventional demand.

The defendant has appealed.

It is not to be presumed that W. S. Parkerson intended to make a donation or gift to Mrs. Hyman.

It is admitted that he purchased the three forged notes from Notary Woulfe, and turned them over to Mrs. Hyman as representing the investment of $5,600 of her money.

After W. S. Parkerson discovered that the notes had been forged by the said notary, he had an interview with Mrs. Hyman, the sub-stance of which, according to her testimony, is as follows:

Mr. Parkerson, after informing Mrs. Hyman that the three notes held by her were worthless, stated he would buy them back from her, and in answer to her inquiry whether it was fair for him to lose the money he said:

"Certainly it is my fault; I made a bad investment, and I ought to have been more careful in looking over it before investing your money."

And he further said:

"Besides, I am better able to stand that loss than you are. I make between $25,000 and $30,000 a year, and you have no means of making money; consequently I will buy these notes from you, and don't worry, they belong to me."

The next day Mrs. Hyman delivered the three notes to Mr. Parkerson, who gave her his written promise to pay 6 per cent. interest on them until they were paid. Later the notes sued on were substituted. Mr. Parkerson paid the interest on the notes during his lifetime.

Mrs. Hyman left the management of her business affairs to Mr. Parkerson, who was an intimate friend of her deceased husband.

In the concursus proceedings referred to in the answer W. S. Parkerson appeared as a creditor of Woulfe, the notary, in not only the amounts of said three notes, but of ten others, "acquired from James J. Woulfe, upon the faith of the said Woulfe's official notarial paraph, notes purporting and officially represented by him to be genuine first mortgage notes," all of which said notes were forgeries.

The defendant argues this case as if it presented merely an ordinary business transaction, involving the execution or transfer of commercial paper.

As a matter of fact, the transaction involved accounting and settlement between an agent and his principal.

Parkerson, the agent, was bound to ac-

count for the money intrusted to him for investment.

On discovering that the money had been invested by him in forged mortgage paper on the faith of the official paraph of a notary, who proved to be a scoundrel, Parkerson did not attempt to excuse himself on the ground that he was not to blame, but, according to the testimony of Mrs. Hyman, confessed his fault and want of care in the premises.

The fact that Parkerson on his own motion substituted his own notes for the three forged notes is strong corroboration of Mrs. Hyman's direct and positive testimony.

Parkerson took the forged notes as a basis for a claim in damages against the notary, which he vigorously prosecuted until his death.

W. S. Parkerson, prominent lawyer and business man, considered the question of his liability as agent to Mrs. Hyman, and decided that he was in fault in not exercising more care in the investment of her money.

He then called on Mrs. Hyman, admitted his fault, and expressed his determination to buy or take up the forged notes at their face value. This was done by the substitution of the notes sued on.

This settlement was based on an admitted legal liability on the part of Mr. Parkerson, and there is no evidence in the record tending to show that no such liability existed.

Defendant's contention that Parkerson was without fault because he purchased the forged notes on the faith of notarial paraphs excludes the consideration of all other facts and circumstances surrounding the transaction, and is repelled by the admissions of the agent himself.

The notes sued on import a valuable consideration, and the record before us discloses a valid consideration based on the failure of the agent to exercise due care in the investment of the funds of his principal.

The burden was on the defendants to show by clear evidence that the notes sued on were issued without adequate consideration.

The transaction between Parkerson and Mrs. Hyman was not a sale of the worthless forged notes, which, as stated supra, Parkerson used as a basis for his claim ex delicto against the notary, alleging that he (Parkerson) had acquired them from said notary.

We consider it unnecessary to decide whether the notes sued on may be valid as an assumpsit of the debt of a third person or as a security.

Judgment affirmed.