227 So.2d 358 (1969)
Ray BOYMER and Mary Boymer, Husband and Wife, Appellants,
v.
Robert C. BIRMELIN, Appellee.
No. 68-913.
District Court of Appeal of Florida. Third District.
October 21, 1969.
Rehearing Denied November 7, 1969.
Hendricks & Hendricks, Miami, for appellants.
Goodman & Peterson, Horton & Schwartz, Miami, for appellee.
Before CHARLES CARROLL, BARKDULL and HENDRY, JJ.
CHARLES CARROLL, Judge.
This is an appeal by the plaintiffs below from an adverse judgment, entered following trial without a jury, in an action on a promissory note.
*359 The defendant did not dispute the making and delivery, or the maturity and nonpayment of the note, but pleaded want of consideration. The appellants seek reversal on the ground that the judgment is contrary to the evidence, in that the defendant failed to establish his affirmative defense by a preponderance of the evidence on that issue. We find merit in that contention, and reverse.
The defendant was called as an adverse witness by the plaintiffs, and his testimony disclosed the following facts. The defendant Birmelin was and is a practicing lawyer in Dade County, and at the times involved the plaintiffs were his clients. Prior to his admission to the bar the defendant had been employed on the plaintiffs' charter boat named Playtime. After his admission to practice, the defendant acted as attorney for plaintiffs in several transactions, including preparation of their wills. In October of 1958 the defendant represented the plaintiffs in the sale of their boat, and submitted a statement entitled "Sale of Playtime, investment plan." That showed the proceeds of the sale were approximately $21,000; that $5,935 thereof had been paid over to Boymer; and that the balance of the proceeds, $15,110, had been invested by the defendant for the plaintiffs. As listed in that report, the investments made for plaintiffs were loans of $11,000 to Central Insurance Agency, Inc., and $1,000 to Shale Development Corp., investment of $1,100 in a second mortgage and an item designated as a business loan to Gourmet Mart. Prior to the time those investments were made the defendant had been attorney for Central Insurance Agency, Inc., and at the time of the investments was attorney for one Shale, who was a principal officer in the two corporations.
The loan of $11,000 to Central Insurance Agency, Inc., was evidenced by two notes, one for $10,000 and one for $1,000. The former note is shown in the record. The latter, of $1,000, was not produced. The $10,000 note, dated December 10, 1958, was made payable to the defendant Robert C. Bermelin, as trustee. It provided for interest at the rate of 15% per annum, payable monthly, and, as to the payment of principal, stated: "Payment will be made by the corporation within six months upon demand." Also typed on the note was the following: "This Note is secured by assets of like value held by the corporation." However, the note was unsecured, and a then current tax return of the corporation listed the corporation's assets as $1,116,791 and its liabilities as $968,607.43, with a loss of $24,310.96 shown for the year to which it related.
The monthly interest payments on the Central Insurance loan appear to have been made until some time in the fall of 1961. On September 21, 1961, the plaintiff Ray Boymer sent a letter to the defendant which included the following:
"My final point in closing, is to remind you of my letter dated January of this year, in which I indicated a desire to convert my funds in Central Insurance Agency and Shale Development Corp., (held in your Trust Acc't) to cash. At that time, I am sure conditions were more favorable than now, as you mentioned in the aforesaid discussion. At any rate, according to the noted copies of this (these) Corp., it is payable 6 months on demand of the Corps. For this reason, I had hoped to, and was assured by you, that I would receive the `hard earned' savings involved, certainly by July of this year.
"Owing to the fact that I have barely earned expenses in yacht management, (with some accounts receivable), I have tried this year to do better in Brokerage of yachts. This has proved disasterous due to timing and the market. For this reason, even tho' we have been most careful with our personal finances, we have depreciated our invested capital with you, by some $5,000, and have even been forced to use monies in emergency savings.

*360 "As your trustee, I am asking you to use whatever legal process you deem necessary to force payment from the assets of the Corp. involved. Due to dire financial circumstances, and in due regard for the necessities of the family, I deem this step necessary, and feel confident that you will do all in your power to protect our interests."
The defendant testified that in the making and handling of these investments for the plaintiff he undertook to act as their "trustee" and to service the loans for them. As indicated by the above quoted portion of the September 1961 letter, Boymer had instructed the defendant in January of that year to proceed to collect the principal of the $10,000 note of Central Insurance Agency, Inc. (and another note), and, being aware of the provision for payment within six months after demand, had expected payment to be made around July of 1961. Boymer testified that when he requested that the loan be paid, Birmelin told him it would be paid in six months. It appears that the separate $1,000 loan to the Shale corporation was repaid, but that no formal demand was made by the defendant on behalf of the plaintiffs on Central Insurance Agency, Inc. for payment of the $11,000 loan, no payment on the principal was made in July of 1961, or thereafter, and no proceedings were instituted against the corporation for the collection thereof.
Later in 1961 the plaintiff Boymer consulted another lawyer regarding the matter. The latter had a telephone conversation with the defendant, as to which defendant testified as follows:
"I told him that the condition of the company was, financially, not good, as far as I could see and that certainly that they had the right to file suit on the note."
Thereafter Boymer called upon the defendant at his office, and the $10,000 note given by defendant to Boymer and his wife was an outgrowth of that meeting. Boymer testified with reference thereto as follows:
"Q Now, tell the Court just the facts and circumstances surrounding the execution and delivery of this note to you and Mrs. Boymer which is dated February 27, 1962, and is admitted as Plaintiffs' Exhibit 1.
"A Well, by now I realize this money wasn't forthcoming, and I wanted to find out why, so I came down to Mr. Birmelin's office on or about that time.
"Q Was your wife with you?
"A No, I came down alone. I didn't want her to be aware, actually, that we were in financial stress, which we were.
"I came to Birmelin's office to find out what he was going to do about it, because we hadn't heard or received any moneys.
"Mr. Birmelin told me then that this company was in fact in trouble and up to that time, actually, I had never really understood what the nature of the business of the company was, but from whatever he said at the time, I felt that it was not a  this is another reason why I wanted to get the records on the company or something  and the reason I wanted them is so that I could go before somebody and get some advice.
"I left his office feeling just a little bit stunned over the fact that apparently all this money was all down the drain.
"Q Is that approximately the first time that Mr. Birmelin advised you that this company was in difficulty or trouble?
"A That is correct, sir, and I told him that leaves me no alternative.
`If you can't help me in the matter, then I will just simply have to go before the Bar Association', and I left the office.

*361 "Mr. Birmelin suggested that we, I believe, we went down to the restaurant. He suggested that we talk it over and see what could be done before I went to the Bar Association.
"I don't know how it happened, but after we left the restaurant, as far as I remember, there was nothing resolved in the restaurant. Right on the corner of Flagler Street here and Miami Avenue he said, `Ray, I will give you a note. How much do you want me to make the note out for?'
"I told him, `Bob, I don't know at this point what actually is owed me and the last time we were at the house and we received a statement from you, we had agreed on a figure, between the two of us we agreed that it was somewhere in the neighborhood of $13,000.'
"I said, `Well, is it agreeable for you to make out the note for $10,000?'
"This is what we agreed to."
As to his reason or purpose in giving the note the defendant testified:
"Your Honor, I felt a moral obligation to Ray Boymer and his wife. I felt a very close kinship to them over a period of years. I didn't want to see that they would lose anything. Ray Boymer said that the obligation that was owed was $10,000. I didn't even question it. I just signed a note and said by virtue of signing this note I will try to get back to Shale and try to collect this money, and I assumed that was the basic balance of it at that time, and I did no checking and that was the second error that I did."
The promissory note for $10,000 which the defendant made and delivered to plaintiffs on February 27, 1962, was made payable three years after that date, with six percent interest payable semi-annually. It is disclosed in the record that it was the understanding of the parties that any amounts which might be paid by Central Insurance in reduction of the principal of the $11,000 loan to it would be credited on the defendant's $10,000 note to the plaintiffs. No such payments by Central were received thereafter.
By the time the defendant gave his note to the plaintiffs, the Central Insurance Agency, Inc., had fallen into financial difficulties which were such as to prevent it from paying the obligation. Thereafter the corporation was involved in a liquidation from which no monies became available for payment to the plaintiffs as unsecured creditors. The defendant participated in the liquidation as attorney for the corporation, to some extent which is not clear from the evidence.[1]
When the defendant's note became due three years after the making and delivery he refused payment thereof; and plaintiffs then filed this suit for collection of the principal and the interest thereon. On this appeal from the judgment in favor of the defendant, the determinative question is whether there was substantial competent evidence to support the conclusion reached by the trial judge that the affirmative defense of want of consideration was established. Primarily it must be noted that on the issue created by that affirmative defense, notwithstanding its presentation in the case in the form of a sworn answer, the defendant had the burden of *362 establishing the defense by a preponderance of the evidence. See Biro v. Geiser, Fla. 1967, 199 So.2d 461, so holding because of the existence and effect of Rule 1.110(d), RCP, 30 F.S.A.
In our view the trial court was in error in holding that the defendant successfully met that burden, and that want of consideration was established by a preponderance of the evidence  a necessary holding in granting judgment for the defendant. On the evidence presented consideration for the note was shown in two respects. In making and handling investments for the plaintiffs, the defendant attorney acted as their agent and as a self-designated trustee, with the consequent duty to exercise due care and reasonable business judgment therein. Without attempting detailed comment on the evidence, it was clearly shown that at the time defendant's note was given to the plaintiffs, Boymer was questioning whether those duties had been fulfilled and had announced an intention to undertake or continue investigation thereof and to present the matter to the Bar Association. It is also clear that the giving of the note by the defendant attorney operated to forestall such further action by Boymer during the three year term of the note. It is well recognized that forbearance to enforce a legal right may constitute consideration for a promise. It is not required that the forbearance be provided for in express language or terms. This is so because a request by the promisor or undertaking by the promisee to forbear may be implied from conduct of the parties and the nature of the transaction. Consideration is supplied when the circumstances are such that it is reasonable to infer that forbearance was desired and sought by the promisor and forbearance by the promisee follows. See City of Valparaiso v. Long, Fla.App. 1962, 141 So.2d 334; 17 Am.Jur.2d Contracts, § 115; 1 S. Williston on Contracts, § 135 (3d ed. 1957); Anno. 74 A.L.R. 293.
A business transaction of this nature between a lawyer and his client or clients should be given careful scrutiny. Here, if we should accept the defendant lawyer's contention that the note he gave was without legal effect, we would be required to assume the lawyer purposely gave his clients a worthless note knowing and intending they should hold it three years, relying on its validity which he impliedly represented to them. We are reluctant to so assume. Rather, we view the record as showing that the note was given for certain forbearance by the clients, that the intended forbearance resulted, and that the note therefore was valid and enforceable.
Another reason for assigning validity to the note is that it was given as an accounting and settlement by the attorney for his stewardship in the matter, which was under investigation by his then disgruntled clients. This is so because his action in giving them his personal note, at the time and in the circumstances then prevailing, in view of what had occurred earlier, indicates there was an awareness by the defendant that he was subject to a possible claim by the clients that the Central Insurance loan was improvident and that he had been negligent and lacking in diligence in failing to obtain its repayment. A promissory note given by an agent or trustee as an accounting or settlement in such an instance is supported by adequate consideration. See Hyman v. Succession of Parkerson, 140 La. 249, 72 So. 953, L.R.A. 1917B 694; Shockney v. Marsh, 83 Ind. App. 407, 147 N.E. 292; 10 C.J.S. Bills and Notes § 151, at p. 623.
For the reasons stated, the judgment for the defendant is reversed, and the cause is remanded to the circuit court with direction to enter judgment in favor of the plaintiffs.
Reversed and remanded with direction.
NOTES
[1] Referring to the period after his note was given to the plaintiffs, the testimony of the defendant included the following: "Q Well, then, basically you did absolutely nothing for the benefit of Mr. Boymer? A No, I didn't do absolutely nothing. I executed a note. I tried to do something. * * * A I made no collections, no. Q And you took no legal action on behalf of Mr. Boymer in connection with the collection, did you? A No, I did not. Q And you did participate, did you, in the liquidation, so to speak, of Central Insurance Agency? A There were some properties that I did participate in, yes. Q And you were returning those to mortgagors of the property, or mortgagees of the property? A That's correct, yes."