*904 COPE, J.
(dissenting).
Disputed issues of material fact remain on the issue of promissory estoppel. The majority opinion is in error in saying that the lender statute of frauds bars the borrowers’ promissory estoppel claim. The issue in this case involves part two of a three part agreement and not, as the majority opinion states, part one of that agreement.
THE THREE-IN-ONE AGREEMENT
The borrower in this case was a local land development company, Coral Reef Drive Land Development, LLC, which obtained a $10 million loan from a national company, Duke Realty Limited Partnership. The purpose of the loan was to buy real estate adjacent to the new Jackson South Memorial Hospital. The idea was to build medical offices on the property.
The parties’ agreement had three major components. They were:
(1) $10 Million Loan to Coral Reef. On December 15, 2005, Duke lent Coral Reef $10 million to purchase the property. The property needed to be rezoned to allow the medical office use. Coral Reef was to obtain the rezoning at its own expense. Duke’s appraisal showed the market value of the property as being $16.8 million in its current condition; $25.6 million if rezoned; and $28.3 million if a certain right-of-way could be vacated. Coral Reef was to pay interest on the loan, and was to repay the principal by December 14, 2007.
(2) Duke’s Option to Buy the Property. Unlike a normal lending transaction, the parties’ contract gave Duke the right to buy the real estate from Coral Reef for $11.5 million plus certain other adjustments. Duke could exercise this option during the two-year period of the parties’ agreement.
There were two important features of the option:
Coral Reef could sell or refinance. The contract allowed Coral Reef to sell the property or refinance the loan at any time.
Reimbursement of Coral Reef. If Duke exercised its option to buy the property for $11.5 million, then Duke would be required to reimburse Coral Reef for all loan interest, both accrued and paid.[7]
(3)Coral Reefs Option to Require Joint Venture. The parties’ agreement provided that if Duke bought the property, Coral Reef could require that the property be purchased by a joint venture consisting of Duke and Coral Reef. In that joint venture, Duke would have a seventy-five percent interest and Coral Reef would have twenty-five percent interest.
THE EVENTS RELEVANT TO PROMISSORY ESTOPPEL
Coral Reef purchased the real estate and began the rezoning process. This proved to be time-consuming and expensive. Coral Reef made one interest payment of $300,000. Coral Reef encountered financial difficulties and thereafter made no further interest payments.
Although Coral Reef was in default on the payment of interest, Duke did not declare a default. Instead, Duke stayed in close touch with Coral Reef, consulting with Coral Reef about the progress of the *905 project. Duke also independently monitored the project through local agents it retained. The contract documents contained an anti-waiver provision, so the fact that Duke declined to declare a default immediately did not bar Duke from declaring a default at a later time.
In April 2007, Coral Reef opened discussions with Duke about restructuring the mortgage or coming to some other agreement about the past-due interest. In May 2007, Coral Reef was successful in obtaining rezoning of Phase I of the project. As stated previously, the property became more valuable when this rezoning was accomplished.
We now come to the heart of the matter. On May 17, 2007, Coral Reef spoke to Duke’s representative and told him that unless Duke firmly committed to exercise its option to buy the property by December 14, 2007 (the loan maturity date), Coral Reef was going to refinance the loan with another lender or sell the property and pay off the loan.
According to Coral Reefs testimony, the Duke representative unequivocally committed that Duke would exercise the option to buy the property by the December 14 deadline in return for Coral Reefs agreement not to refinance or sell the property.
Duke acknowledges all of this, except for one key difference. According to the Duke representative (as stated in an internal email to his boss), the Duke representative said, “I told him I believe we will stay in the deal.” (Emphasis added). Thus, by Duke’s account, Duke simply told Coral Reef what it probably would do, but did not give Coral Reef an unequivocal commitment. The Duke representative’s email also said, “If we don’t buy it, they have to find someone pretty quickly ... I can’t imagine not buying this dirt.”
Because the trial court granted a summary judgment in this case, we must read the factual record in the light most favorable to Coral Reef, as the non-moving party. See Markowitz v. Helen Homes of Kendall Corp., Inc., 826 So.2d 256, 258-59 (Fla.2002). It follows, for purposes of this appeal, that we accept Coral Reefs testimony: Duke’s representative gave an unequivocal assurance to Coral Reef that Duke would exercise its option and purchase the property by December 14, 2007, in exchange for which Coral Reef refrained from selling the property or refinancing the loan.
Both sides agree that in the next several months Coral Reef and Duke were in constant communication regarding the details of the development project. Duke made a number of suggestions regarding how the project should proceed.
On October 17, 2007, Duke sent Coral Reef a default notice, stating that it was accelerating the loan. Coral Reef states that the Duke representative said this default notice was a mere formality required by its loan committee and that, as agreed, Duke would exercise the option by December 14, 2007.
According to documents produced in discovery, executives within Duke directed a Duke analyst to prepare a financial analysis entitled “Foreclosure vs. Option.” The purpose was to determine whether it would be more profitable for Duke to foreclose on the property rather than exercising the option to buy. The study concluded that it would be more profitable to foreclose.
On December 14, 2007, Duke filed a foreclosure suit. Once the title to the property was clouded by the foreclosure suit, Jackson South Hospital declined to enter into a written space commitment for the buildings that were to be constructed. Given the uncertainty created by the fore *906 closure suit, Coral Reef was unable to sell the property or obtain alternative financing.
In the foreclosure suit, Coral Reef filed counterclaims. The counterclaim relevant here is Coral Reefs claim for promissory estoppel. The trial court entered summary judgment in favor of Duke on the foreclosure claim and the counterclaims. Coral Reef has appealed.
PROMISSORY ESTOPPEL
Florida recognizes the cause of action for promissory estoppel. The Florida Supreme Court has explained:
The basic elements of promissory es-toppel are set forth in Restatement (Second) of Contracts § 90 (1979), which states:
(1) A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.
W.R. Grace & Co. v. Geodata Servs., Inc., 547 So.2d 919, 924 (Fla.1989).[8]
The facts of this case make out a viable claim for promissory estoppel. In May 2007, Coral Reef had seven months remaining before the $10 million loan came due. There was ample equity in the property, the value of which had increased after the rezoning was accomplished. Based on its close working relationship with Duke, Coral Reef also believed that Duke was interested in exercising the option to buy the real estate.
On May 17, 2007, Coral Reef spoke with Duke’s representative and advised him that unless Duke firmly committed to exercise its option by the December 14, 2007 loan maturity date, Coral Reef was going to refinance the loan or sell the property and, under either alternative, pay Duke in full. The parties appear to agree that under such a scenario, Duke would lose its option to buy the property.
According to Coral Reef, Duke’s representative unequivocally committed that Duke would exercise its option by the December 14 deadline and in reliance on that promise, Coral Reef did not seek an alternative lender or sell the property. Duke foreclosed instead of exercising the option, and Coral Reef lost the property.
These facts state a claim for promissory estoppel. Promissory estoppel exists where a promisor — -Duke in this case— makes “a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promis-ee.” Restatement (Second) of Contracts § 90. The Duke representative knew that the promise (to exercise the option) would induce forbearance by Coral Reef because Coral Reef said so. Coral Reef told Duke that they would sell or refinance unless Duke made the unequivocal commitment to exercise the option.
For promissory estoppel to exist, Duke’s promise must also induce the action or for forbearance. Id. It did. Coral Reef continued its work on the project and neither sold nor refinanced. Finally, promissory estoppel applies “if injustice can be avoided only by enforcement of the promise.” Id. Under the facts of this case, that element is also satisfied. The summary judgment should be reversed and the cause *907 remanded for further proceedings on that issue.
Duke argues that promissory estoppel cannot be invoked when the parties have a written contract. That is not so. Estop-pel prevents a person from contradicting “a representation of fact made by him after another has relied on the representation.” Restatement (Second) of Contracts § 90 comment a. Several of the Restatement examples involve promises made in connection with a written contract. See, e.g., id. comment b illus. 2 (borrower’s detrimental reliance where lender promised not to foreclose for a specified time), comment c illus. 5 (new lender reasonably relied on original lender’s promise to release part of the land from the mortgage upon payment of a stated sum).
Duke’s more substantial argument is that promissory estoppel cannot be employed where a promise is barred by the bank statute of frauds, which is section 687.0304, Florida Statutes (2005). As already stated, the doctrine of promissory estoppel is unavailable if the promise is barred by the statute of frauds. W.R. Grace & Co., 547 So.2d at 920, 925.
The bank statute of frauds requires credit agreements to be in writing. A credit agreement includes “an agreement to lend or forbear repayment of money, goods, or things in action, to otherwise extent credit, or to make any other financial accommodation.” § 687.0304(l)(a), Fla. Stat. A creditor is a person who extends credit under a credit agreement with a debtor, while a debtor is a person who obtains such credit.
The bank statute of frauds is not applicable here. As already explained, this transaction had three parts: (1) the loan; (2) the option for Duke to buy the real estate; and (3) the option for Coral Reef to require the formation of a joint venture. The issue here is transaction (2) — the option to buy the real estate — not transaction (1) — the loan.
This is not a case in which there was an outstanding loan and the borrower asked the lender to forbear the collection of interest. Under such facts, the bank statute of frauds would apply and the agreement would have to be in writing.
Here, however, the issue is the option for Duke to buy the real estate. Coral Reefs specific request was for a firm commitment from Duke that it would exercise the option by December 14, 2007, failing which Coral Reef would sell the property or refinance the loan. When Coral Reef gave that assurance, it was Coral Reef who engaged in forbearance — forbearance from selling the property or refinancing the loan.
Duke argues, however, that this transaction falls within the bank statute of frauds because this amounted to Duke’s agreement to allow Coral Reef to forbear from repayment of interest, or amounts to “any other financial accommodation” for purposes of the statute.
Duke’s argument is incorrect under the circumstances of this case. The option for Duke to buy the real estate already existed and was not created as an “accommodation” for Coral Reef. All Coral Reef wanted was a firm commitment regarding exercise of the option.
Regarding the repayment of interest, the option agreement establishes that the purchase price for Duke to acquire the property was $11.5 million plus reimbursement of costs actually expended by Coral Reef to rezone the property. Of particular interest here, Duke was also required to reimburse Coral Reef for “all interest that has accrued on the Loan (irrespective of whether such interest has been paid by Borrower or has accrued under the *908 Loan and remains unpaid).” R. 252 (emphasis added).
In other words, the option itself contemplated the possibility that Coral Reef might not have paid the interest due on the loan. Regardless of whether the interest was paid or unpaid, if the option was exercised, the accrued but unpaid interest was to be an adjustment to the purchase price. As Coral Reef has correctly argued, under the terms of the option agreement, overdue interest is accounted for at the closing by making the appropriate financial adjustment. Under the circumstances present here, the bank statute of frauds does not apply.
The majority opinion says that there was no consideration for Duke’s unequivocal commitment to Coral Reef that it would exercise the option. That is incorrect. Forbearance counts as consideration for such a promise. This court has said:
It is well recognized that forbearance to enforce a legal right may constitute consideration for a promise. It is not required that the forbearance be provided for in express language or terms. This is so because a request by the promisor or undertaking by the promisee to forbear may be implied from conduct of the parties and the nature of the transaction. Consideration is supplied when the circumstances are such that it is reasonable to infer that forbearance was desired and sought by the promisor and forbearance by the promisee follows.
Boymer v. Birmelin, 227 So.2d 358, 362 (Fla. 3d DCA 1969).
The majority opinion says that “there is no evidence whatsoever that Coral Reef ever attempted to refinance or sell the property, much less that it could have done so ....” majority op. at 902. Respectfully, that assertion does not read the record in the required light. Coral Reefs entire point here is that it told Duke that Coral Reef would sell or refinance unless Duke gave a firm commitment that it would exercise the option. Duke gave that assurance. Coral Reef refrained from refinancing or selling the property.
Duke did not make an argument in its motion for summary judgment that it would have been impossible for Coral Reef to refinance or sell the property. This court cannot consider an alternative ground for affirmance unless there has been a fair opportunity for that issue to be developed in the record. Robertson v. State, 829 So.2d 901 (Fla.2002); Dade County Sch. Bd. v. Radio Station WQBA, 731 So.2d 638 (Fla.1999).
To the extent that the present record addresses this issue, the record indicates that in 2007, a sale or refinancing was feasible. The loan amount here was $10 million on land that at the outset was worth $16.9 million, and after rezoning was worth more. Duke continued to verify the land value as the transaction unfolded. According to an email sent by Duke’s representative, “This site is zoned, in one of the fastest growing parts of the country, adjacent to a ... hospital that is doubling in size and is out of land.” For that reason Duke’s representative said, as previously quoted, “I can’t imagine not buying this dirt.”
The majority opinion states that “any notion that Duke Realty had ‘firmly committed’ to exercise the purchase option in December could hardly have been relied upon after the undisputed receipt of a written default notice two months before the date the option was to expire.” Majority op. at 902. Again, this assertion reads the record in the wrong light. According to Coral Reefs testimony, they were assured by the Duke representative that this *909 was a meaningless formality and that Coral Reef should pay no attention to it.
In conclusion, we should reverse the summary judgment on the issue of promissory estoppel and remand the cause for further proceedings.[9]

. It appears that the reimbursement of interest was inserted in order to be sure that Duke's loan did not violate the Florida usury law. See § 687.03, Fla. Stat. (2005). The properly was appraised as being worth several million dollars more than the $10 million loan amount. If Duke exercised the option and if the excess value were to be characterized as interest, the loan would violate the usury statute and be unenforceable. For that reason the loan was to be unwound if and when the option was exercised.

. The doctrine is not available where the claim would be barred by the statute of frauds. Id. at 920, 925; Tanenbaum v. Biscayne Osteopathic Hosp., Inc., 190 So.2d 777, 779 (1966).

. The majority opinion states that if Coral Reef refinanced, or sold the property, such a transaction would not terminate Duke’s option. Majority op. at 902 n. 4. So far as I can determine, Duke did not make that argument in its motion for summary judgment or this appeal. Accordingly, Coral Reef has had no opportunity to respond to that argument. In any event, even if the majority opinion is correct, it does not establish that Coral Reef would have been unable to refinance or sell this property, subject to the Duke option.