435 So.2d 840 (1983)
Stephen M. BELL, Madeline J. Bell and John F. Mercede, Appellants/Cross Appellees,
v.
Ledford ALSIP and Cherie Gray a/k/a Cherie Gray Alsip, Appellees/Cross Appellants.
No. 82-1584.
District Court of Appeal of Florida, Fourth District.
May 11, 1983.
Rehearing and Rehearing Denied August 25, 1983.
*841 Stephen M. Bell of Stephen M. Bell, P.A., Plantation, for appellants/cross appellees, Stephen M. Bell and Madeline J. Bell.
Jerome S. Reisman of Jerome S. Reisman, P.A., Miami, for appellees/cross appellants.
Rehearing and Rehearing En Banc Denied August 25, 1983.
HERSEY, Judge.
We reverse the judgment appealed here which denied specific performance to the sellers of real property, which judgment was based on a finding that the purchasers had a right under the purchase and sale agreement to avoid the contract by forfeiting their deposit. This result renders the cross appeal and other issues in the main appeal moot.
In brief, the contract contained the following printed condition:
DEPOSIT. Checks issued for the deposit on this contract will be deposited promptly for clearance and the holder of the deposit will not be responsible for non payment of checks. Deposit checks will be deposited and the funds held in escrow account until the sale is closed. If the Seller does not execute the contract, the deposit will be returned to the Buyer. If the contract is executed by the Buyer and the Seller and the sale is not closed because of the fault of the Buyer, the holder of the deposit is directed to pay expenses incurred and to pay the broker his fee but not more than half the deposit and pay the balance of the deposit to the Seller as consideration for execution of this agreement and the holder of the deposit will be held harmless by all parties for disbursement in good faith as here provided. If the contract is executed by the Buyer and the Seller and the sale is not closed because of the fault of the Seller, the deposit shall be returned to the Buyer. THESE DIRECTIONS AS TO DISBURSEMENT OF THE DEPOSIT SHALL NOT AFFECT THE RIGHTS OF THE SELLER OR BUYER, TO PURSUE ANY ACTION FOR ENFORCEMENT OF THIS CONTRACT OR FOR DAMAGES BECAUSE OF NON PERFORMANCE BY DEFAULTING PARTY. It shall be understood and agreed that upon default by either Buyer or Seller the defaulting party shall be liable for the above mentioned broker's commission upon the proper execution of this agreement by the parties. [Emphasis added.]
This provision is clear and unambiguous. It must be supposed that when the parties agree that resort to these directions "shall not affect the rights [of the parties] to pursue any action for enforcement of this contract ... .," they mean simply that. Such a provision is the antithesis of a liquidated damages clause. We, therefore, hold that the sellers were entitled to either actual damages or specific performance in the event buyers defaulted.
The buyers elected not to proceed with a closing of the transaction, offering two possible justifications for their failure to perform the contract. First, they maintain that the house described in the contract is not the house they intended to purchase. The trial court, by implication, found to the contrary and such a finding is supported by substantial competent evidence.
Secondly, buyers point to a provision of the contract which they contend supports their legal position. That provision reads:
Buyer shall have the right to have the roof, electric, pool, and plumbing inspected by licensed persons qualified to do such inspections. If such inspections reveals [sic] functional defects, Seller shall pay for repairing such defects. All repairs not to exceed 1% of purchase price.
*842 This provision is obviously ambiguous, as it leaves unanswered the question of what happens if the cost of required repairs exceeds 1% of the purchase price. The buyers argued and the trial court held that if the cost of required repairs exceeded 1%, then the buyers could avoid the contract by forfeiting their deposit. We need not dwell on the accuracy of that interpretation. Assuming it to be so, the only evidence offered to show that the 1% figure would be exceeded was a report that suggested that a portion of the roof should be replaced and that the cost of such replacement together with a three year guaranty of the work would exceed 1% by a small amount. The report did not indicate that a "functional defect" existed nor did it indicate the cost of the work without such a guaranty. Three estimates submitted by other companies were each well below the 1% figure. In addition, the sellers agreed to furnish a new tile roof at their expense. In short, the finding that this provision of the contract was activated is not supported by substantial competent evidence.
It having been determined that the buyers breached the contract, the remaining issue is whether the sellers were entitled to specific performance. They clearly have such right. Real estate is unique. Ownership of real estate is at the same time an asset and a liability. Money damages upon breach of a purchase and sale agreement adequately compensates neither a seller, burdened with ownership, nor a buyer, deprived of ownership and possession. Specific performance is uniquely capable of rectifying the breach of such a contract. See Frank Silvestri, Inc. v. Hilltop Developers, Inc., 418 So.2d 1201 (Fla. 5th DCA 1982). See generally 29A Fla.Jur. Specific Performance § 75 (1967). We, therefore, reverse the final judgment and remand this cause for entry of a judgment granting to appellants-sellers specific performance.
REVERSED; REMANDED.
ANSTEAD and BERANEK, JJ., concur.