972 So.2d 872 (2007)
LENNAR HOMES, INC., a Florida Corporation, and Silver Palm Holdings of Homestead, LLC, a Florida Limited Liability Corporation, Appellants,
v.
Manuel DORTA-DUQUE, Appellee.
No. 3D06-1373.
District Court of Appeal of Florida, Third District.
September 19, 2007.
Rehearing and Rehearing Denied January 30, 2008.
*874 Bilzin Sumberg Baena Price & Axelrod, Alvin D. Lodish and Allen J. Smith and Adam F. Haimo, Miami, for appellants.
Josephs Jack and Susan S. Lerner, Miami, for appellee.
Before GREEN, RAMIREZ, and CORTIÑAS, JJ.
Rehearing and Rehearing En Banc Denied January 30, 2008.
RAMIÑEZ, J.
Lennar Homes, Inc. and Silver Palm Holdings of Homestead, LLC, appeal to this Court the trial court's Final Declaratory Judgment and Final Judgment Ordering Specific Performance in favor of Plaintiff Manuel Dorta-Duque. We conclude that the trial court was correct in finding that Dorta-Duque was entitled to a declaratory judgment and to specific performance, based on the language of the subject Settlement Agreement, as well as the competent, substantial evidence presented at trial supporting the final judgment. Accordingly, we affirm and adopt in its entirety the trial court's succinct order as our own opinion.[1] The trial court's order reads as follows:
*875 FINAL DECLARATORY JUDGMENT AND FINAL JUDGMENT ORDERING SPECIFIC PERFORMANCE IN FAVOR OF PLAINTIFF MANUEL DORTA-DUQUE
This cause came before the court for a non jury trial on February 6 and 7, 2006, on plaintiffs claims for a declaratory judgment and for specific performance of the Settlement Agreement. The court, having conducted a two-day nonjury trial, finds that the plaintiff has met his burden of proving, by clear, definite, competent and satisfactory proof, his entitlement to specific performance of the Settlement Agreement and is thus, entitled to a declaratory judgment in his favor and to specific performance of the January 16, 2004, Settlement Agreement based upon the followings findings of fact and conclusions of law:
1. On September 25, 2002, Lennar entered into a Purchase and Sale Contract for numerous acres of real property located in Miami-Dade County, Florida with Manuel Diaz and Emilia Diaz (hereinafter, the Sellers).
2. This contract was contingent upon the satisfaction of numerous conditions. Before closing, Lennar required that the Sellers obtain a zoning change for the property so that Lennar could develop the property with single family residences and apartments. Lennar was not required to close with the Sellers until the zoning approval was final and after all appeals were exhausted.[1] Furthermore, the contract contained penalty provisions if the closing was delayed.
3. The Sellers applied for the zoning change and plaintiff Dorta-Duque, who owns the adjacent property, objected to and opposed the zoning change.
4. On December 19, 2003, the Board of County Commissioners adopted. Resolution No. Z-24-03 which approved the Sellers' request for the zoning change.
5. The applicable appeal period for review of that resolution expired thirty days after the Deceinber 19th adoption, *876 which, the parties agree, occurred on Tuesday, January 20, 2004.[2]
6. Plaintiff was the primary opponent of, the zoning change at the Community Council and County Commission hearings.
8. In an effort to resolve their differences relating to the zoning change, on Friday, January 16, 2004, Dorta-Duque and Lennar[3], entered into the Settlement Agreement which is the subject of this litigation. Pursuant to that agreement, Lennar agreed to lease and sell a portion of the property[4] it was purchasing to Dorta-Duque in exchange for Dorta-Duque, inter alia, agreeing not to pursue judicial review of the Commission's approval of the zoning application.
9. Both parties retained attorneys to represent their interests during the negotiation of the Settlement Agreement. This court finds that the Settlement Agreement was an arms-length transaction arrived at through fair negotiation between sophisticated individuals who were represented by counsel.
10. Following the execution of the Settlement Agreement, Dorta-Duque, performed all of his obligations, but, Lennar took the position that it was no longer obligated to perform. The parties disagree whether certain contingencies occurred which excused Lennar from its obligations. The contingencies in dispute are set forth in paragraph six of the Settlement Agreement. That paragraph provides:
6. In consideration of the execution of this Agreement, Dorta-Duque, on behalf of himself, his heirs, successors and assigns, agrees not to oppose, object to or interfere, whether directly or indirectly, with the efforts of Lennar to secure the approval of the Application and other approvals that are necessary for the development of the Property, provided Lennar is in compliance with the terms of this Agreement. Lennar's obligations under this Agreement are specifically subject to and contingent upon the approval of the Application and the expiration of the applicable appeal period without an appeal or action at law or equity having been filed by anyone. Moreover, in the event that an appeal is filed, Dorta-Duque shall not directly or indirectly assist (financially or otherwise) such party or parties in the prosecution of said appeal. Dorta-Duque has previously retained the services of Kent Harrison Robbins, Esq., to prepare, file and prosecute an appeal of the Application and other potentially available challenges to the Application and will continue to represent Dorta-Duque and, as his representative, will not file or pursue such an appeal or challenge. Further, Dorta-Duque has represented to Lennar, and Lennar has relied upon such representation, that Kent Harrison Robbins, Esq., has indicated to Dorta-Duque that if Dorta-Duque and Lennar execute this Agreement, Kent Harrison Robbins, Esq. will be ethically prohibited from representing *877 other affected parties in the filing and prosecution of such an appeal or challenges. Immediately following the execution of this Agreement, Dorta-Duque shall direct to stop work on such an appeal or challenge and shall further direct Kent Harrison Robbins, Esq. not to undertake the representation of any other potential appellant with regard to the Application or the development of the Property. For the purposes of this paragraph, the term appeal shall mean a jurisdictionally sufficient petition for writ of certiorari that is filed in accordance with the Florida Rules of Appellate Procedure which causes the circuit court to issue an order to show cause. For its part, Lennar represents to Dorta-Duque that upon the expiration of the appeal period, all conditions to the closing with Diaz would have been met and that Lennar has the ability to close on the purchase. [Emphasis added].
11. On the last day of the appeal period (January 20, 2004), at 3:48 PM, three property owners, who had appeared before the County Commission to object to the approval of the application, filed a Notice of Appeal with the Clerk of the Circuit Court.
12. It is because the notice of appeal was filed[5] that Lennar took the position that its obligations under the contract were excused.
13. The court finds that under paragraph six, Lennar was not excused from its obligations (to lease and sell the land to Dorta-Duque) unless (1) a jurisdictionally sufficient petition for writ of certiorari was filed prior to the expiration of the applicable appeal period which, in turn, (2) caused the circuit court to issue an order to show cause. No jurisdictionally sufficient petition for writ of certiorari was filed prior to the expiration of the applicable appeal period and it is undisputed that the court never issued an order to show cause.
14. The term "order to show cause" set forth in the agreement is not ambiguous, and the court rejects Lennar's claim that an April 29, 2004, case management order to respond issued by a clerk was the same thing as an order to show cause issued by the court. In this regard, the court considers Lennar's interpretation of the language of the settlement agreement to be unreasonable.
15. The experts for both parties agreed, and this court finds, that the April 29, 2004, clerk-issued case management order was not the same thing as an order to show cause issued by the court. Lennar's expert testified in deposition that the April 29th order would not even be the functional equivalent of an order to show cause if the court in some fashion had not directed its issuance. The clerk who issued the April 29th order testified that she did not consult with a judge before issuing that order, that she was not directed by a judge to issue the order and further testified that the order was only an "administrative case management order". Lennar's expert did not agree with Lennar's counsel's suggestion that the April 29th order had the "same legal effect" as an order to show cause.
16. Pursuant to the Settlement Agreement, Lennar's obligations were not excused unless an order to show cause was issued. Because an order to show cause was not issued, this court finds that Lennar's obligations were not excused.

*878 17. It is undisputed that that expiration of the applicable appeal period referred to in paragraph six of the Settlement Agreement occurred on January 20, 2004. A jurisdictionally sufficient petition for writ of certiorari, in accordance with the Florida Rules of Appellate Procedure, had not been filed by January 20, 2004[6]. Instead, only a notice of appeal was filed by that date. The parties' experts agree that the notice of appeal was not a jurisdictionally sufficient petition for a writ of certiorari and was not in accordance with the Florida Rule of Appellate Procedure 9.100.
18. Lennar takes the position that Florida Rule of Appellate Procedure 9.040(c) permits the circuit court's appellate division to later treat this improper remedy (notice of appeal) as if it seeks a proper remedy (petition for a writ of certiorari) and that therefore, this court must consider them to be the same. Rule 9.040(c) provides "[i]f a party seeks an improper remedy, the cause shall be treated as if the proper remedy had been sought; provided that it shall not be the responsibility of the court to seek the proper remedy". Clearly, the rule does `not state or imply that a notice of appeal and a petition for writ of certiorari are the same or that the terms are interchangeable. The agreement specifically required a timely filed jurisdictionally sufficient petition for writ of certiorari and not something else that might later be treated (by an appellate court) in a way that would allow a proper remedy to be adjudicated. Furthermore, the credible parol evidence[7] established that a jurisdictionally sufficient petition for a writ of certiorari was precisely what was contemplated and bargained for by the parties and not a mere notice of appeal.
19. The three attorneys who participated in the negotiations, Juan Mayol for Lennar, and Mark Starkman and Kent Harrison Robbins for Dorta-Duque, have testified that the qualifying language limiting "appeal" and defining it as a jurisdictionally sufficient petition for writ of certiorari was placed in the agreement because Dorta-Duque did not want to permit Lennar to get out of its deal with him if only a notice of appeal was filed.[8] Clearly, only the filing *879 of a petition for writ of certiorari would excuse Lennar from its obligations (if the petition caused the court to issue a rule to show cause).
20. Lennar's counsel, Mr. Mayol, testified that he did not think that any of the other property owners would file an appeal in time since the thirty day deadline was impending.[9] Both the agreement and the credible parol evidence make it clear that the parties intended to remain bound if no one filed a petition for writ of certiorari prior to the expiration of the applicable appeal period.
21. Having concluded that the contingencies under paragraph six did not occur to relieve Lennar from its obligation, and further, that Dorta-Duque performed his obligations under the Settlement Agreement, the court now considers Lennar's affirmative defenses.
22. The court finds that Lennar has failed to meet its burden of proving its affirmative defense of unclean hands. Lennar's attorney, Mr. Mayol, who was negotiating on Lennar's behalf, testified that Dorta-Duque did nothing wrong. No evidence was presented to support Lennar's defense of unclean hands. As the court stated earlier, the Settlement Agreement was an arms-length transaction arrived at through fair negotiation between sophisticated individuals who were represented by counsel.
23. Next, the court finds that Lennar has failed to meet its burden of proving the affirmative defense of laches. In order to prevail on the defense of lathes; Lennar had to prove the following by clear and convincing evidence:
(a) conduct on the part of Lennar giving rise to the situation upon which the complaint is based;
(b) the failure of Dorta-Duque, having had knowledge or notice of Lennar's conduct, to assert his rights by suit;
(c) lack of knowledge on the part of Lennar that Dorta-Duque would assert the right on which he based his suit; and
(d) injury or prejudice to Lennar if relief was accorded to Dorta-Duque.[10]
Mr. Dorta-Duque filed this lawsuit to enforce his claim in December 2004, three months after the closing of the property. The Settlement Agreement provided that Lennar "shall deliver the Buffer Property within three months following the purchase of the Property by Lennar or its successors or assigns from Diaz . . .". Lennar has failed to prove this affirmative defense.
24. Turning now to Lennar's defense, that the Settlement Agreement was void ab initio for a failure of a meeting of the minds,[11] the court finds that Lennar has failed to meet its burden of proof for this defense. Moreover, the court finds that there is clear, competent and satisfactory proof that the *880 contract contained definite terms and conditions which included the essential elements of a valid contract.[12]
25. The court also rejects Lennar's affirmative defense that the Settlement Agreement is not enforceable because of lack of consideration.[13] The court finds that Lennar has failed to meet its burden of proof for this defense. On the contrary, the court finds that there is clear, competent and satisfactory proof that the Settlement Agreement was supported by consideration. By the express terms of the Settlement Agreement, Mr. Dorta-Duque agreed to forbear enforcing his legal right to pursue judicial review of the approval of the Application in exchange for Lennar's promise to convey the Buffer Property to him under the terms and conditions of the Settlement Agreement.[14] Lennar's attorney, Juan Mayol, testified that the purpose of entering into the Settlement Agreement that day "was to prevent an appeal from being filed, obviously in this case by Manny, so that it would cause a delay on the transaction."[15] Mr. Mayol also acknowledged that Lennar could not have expected that this Settlement Agreement was going to guarantee that no delay from an appeal would occur.[16]
26. This court rejects Lennar's affirmative defense that the plaintiff has a sufficient and adequate remedy at law and is therefore not entitled to specific performance.[17] The court finds that Lennar has failed to meet its burden of proof for this defense. Moreover, the court finds that there is clear, competent and satisfactory proof that the plaintiff does not have a sufficient and adequate remedy at law.[18] The Settlement Agreement itself recites that the Buffer Property "is located directly east of Dorta-Duque's property." Mr. Dorta-Duque's uncontroverted testimony was that the Buffer Property was a unique piece of land, located as it was directly next to his house and farm business, and that he was extremely concerned that his agricultural activities would interfere with the adjoining neighbors that would buy Lennar's homes if there was not a Buffer in-between.[19] Moreover, it is also uncontroverted that Mr. Dorta-Duque cannot be restored to the status quo, having already given up his legal right to pursue judicial review of the approval *881 of the Application and the time for appellate review having expired.
27. The Defendants' remaining affirmative defenses are either without merit or are not true affirmative defenses but instead are legal arguments.
WHEREFORE, and by reason of the foregoing, this court enters a final declaratory judgment finding that Lennar was not excused from performing under the Settlement Agreement and further that the plaintiff, Manuel Dorta-Duque, is entitled to specific performance of the Settlement Agreement. Accordingly, the court orders the defendants, Lennar Homes, Inc., and Silver Palm Holdings of Homestead, LLC, to specifically perform and convey the Buffer Property within thirty days from the day of this final judgment to the plaintiff under the terms set forth for said conveyance in the Settlement Agreement.
CORTIÑAS, J., concurs.
GREEN, J. (dissenting).
This is an appeal from a final declaratory judgment ordering appellants, Lennar Homes, Inc., and Silver Palm Holdings of Homestead, L.L.C. (collectively "Lennar"), to perform under a settlement agreement made with appellee Manuel Dorta-Duque. Lennar's obligations to Dorta-Duque were contractually excused for the reasons more fully set forth below and the majority's holding to the contrary is, respectfully, erroneous as a matter of law. I, therefore, must dissent.

A. BACKGROUND
On September 25, 2002, Lennar executed a Purchase and Sale Contract for numerous acres of real property in south Dade County, Florida, with Manuel Diaz and Emilia Diaz ("Diaz"). Lennar's agreement to purchase this property was contingent upon, among other things, Diaz's ability to obtain a zoning change to permit Lennar to build residential homes on the property. If the closing on this property was delayed, the contract contained two significant penalty provisions for Lennar.[2]
Diaz applied for the appropriate zoning change with the Dade County Zoning Appeals Board. Dorta-Duque, who owns the property adjacent to Diaz's property, objected. The Community Zoning Appeals Board denied Diaz's request for a zoning change.
Diaz thereafter appealed this denial to the Miami-Dade Board of County Commissioners ("County"). After a hearing on December 19, 2003, the County adopted Resolution Z-24-03 ("Resolution") which approved Diaz's request for a zoning change. The adoption of this Resolution was over the "objection of Dorta-Duque and other neighboring property owners. The deadline for seeking appellate review of this Resolution in the Circuit Court Appellate Division was thirty days thereafter, or January 20, 2004.[3]
As Dorta-Duque was the leading opponent of the zoning change, Lennar negotiated with him in an effort to persuade him not to pursue an appeal of the Resolution. This negotiation culminated with the execution of a settlement agreement between Lennar and Dorta-Duque on January 16, *882 2004. This settlement agreement was the subject matter of the declaratory action below and the instant appeal.
According to the terms of the settlement agreement, Lennar agreed to set aside for purchase by Dorta-Duque a five (5) acre parcel of land adjoining Dorta-Duque's residence at a price considerably below market value. Lennar's obligation in this regard, however, was contingent upon no appeal being filed by anyone or any action at law or equity commenced by anyone. Specifically, paragraph six of the settlement agreement provided in relevant part that:
Lennar's obligations under this Agreement are specifically subject to and conditioned upon the approval of the application and expiration of the applicable appeal period without an appeal or action at law or equity having [sic] filed by anyone. . . . For purposes of this paragraph, the term appeal shall mean a jurisdictionally sufficient petition for writ of certiorari that is filed in accordance with the Florida Rules of Appellate Procedure which causes the circuit court to issue an order to show cause. For its part, Lennar represents to Dorta-Duque that upon the expiration of the appeal period, all conditions would have been met and that Lennar has the ability to close on the purchase.
Pursuant to the terms of the settlement agreement, Dorta-Duque never appealed the Resolution. However, on January 20, 2004, the last day of the appeal period, one of the other objecting neighboring property owners filed a pro se notice of appeal of the Resolution with the Appellate Division on behalf of the other objecting neighbors.[4]

B. APPELLATE PROCEEDINGS BEFORE THE CIRCUIT COURT
In response to the notice of appeal, a flurry of motions and pleadings were filed in the Appellate Division. Significantly a motion to dismiss the appeal for lack of jurisdiction was filed on behalf of the County and Diaz. The grounds for this motion were, among other things, that quasi-judicial decisions of administrative tribunals not subject to the Administrative Procedure Act are reviewable only by certiorari under Florida Rule of Appellate Procedure 9.100(c).[5] Before the court ruled on this motion, however, the appellants filed a petition for certiorari. The court denied the motion to dismiss. Thereafter, the clerk of the court issued a case management order directing Diaz and the County to respond to the petition. No order to show cause was ever issued by the Circuit Court.
After Diaz and the County filed their respective responses to the petition, a three-judge Appellate Division panel[6] reviewed the petition on the merits and issued a per curiam opinion denying the same. The Circuit Court mandate then issued.
The Appellate Division proceedings lasted six months. As a result of this delay, Lennar was required to pay approximately three million dollars in penalties and escalating costs to Diaz under the Purchase and Sale Agreement.
*883 Dorta-Duque demanded Lennar's full performance under the settlement agreement since he had fully complied with his obligation not to appeal the County's decision. When Lennar refused to comply, Dorta-Duque filed the declaratory judgment action below.

C. DECLARATORY JUDGMENT PROCEEDINGS
Dorta-Duque filed a two-count complaint against Lennar for declaratory relief and specific performance of their settlement agreement. In response, Lennar filed its amended answer and raised affirmative defenses. Lennar averred, among other things: (1) that its obligations to Dorta-Duque under paragraph six of the settlement agreement were contingent upon no appeal being filed during the applicable appeal period. Hence, since the neighboring property owners filed an appeal of the Resolution, Lennar had no obligation to Dorta-Duque; (2) that pursuant to Florida Rule of Appellate Procedure Rule 9.040(c), the notice of appeal filed by the neighboring property owners was accepted as a timely filed petition for writ of certiorari by the Appellate Division; (3) that by accepting the neighboring property owners' notice of appeal as a petition for writ of certiorari, the Appellate Division confirmed the jurisdictional sufficiency of the appeal; and (4) that Lennar's consideration for entering into the settlement agreement with Dorta-Duque was to avoid a time consuming appeal of the Resolution.
Both Dorta-Duque and Lennar agreed that there were no disputed issues of fact and that this dispute centered on the meaning of paragraph six of their settlement agreement. Both parties filed cross-motions for summary judgment. Although they argued that the language in paragraph six of the settlement agreement was unambiguous, the trial court denied both motions. The trial court found paragraph six to be ambiguous and determined that the trier of fact needed to hear and consider the specific facts surrounding the intent of the parties regarding this paragraph.
This case then proceeded to a two-day bench trial where parol evidence was admitted to ascertain the parties' intent of the following language contained in paragraph six of the settlement agreement.
Lennar's obligations under this Agreement are specifically subject to and conditioned upon the approval of the application and expiration of the applicable appeal period without an appeal or action at law or equity having [sic] filed by anyone. . . . For purposes of this paragraph, the term appeal shall mean a jurisdictionally sufficient petition for writ of certiorari that is filed in accordance with the Florida Rules of Appellate Procedure which causes the circuit court to issue an order to show cause.

(emphasis added). It was undisputed at the trial below that this agreement was reached by the parties and their respective counsel on the eve of the expiration of the applicable appeal period for the Resolution. It was also undisputed that the two principal attorneys responsible for the negotiation of this provision had very limited experience with appellate practice or procedure.[7]
It was established at the trial below that Dorta-Duque and Lennar knew during their negotiations that the other objecting property owners were planning to appeal the Resolution. Dorta-Duque also admitted that prior to signing the settlement agreement, he was made aware of the fact that if these property owners filed a notice of appeal, the Circuit Court had the authority *884 to treat it as a petition for writ of certiorari.[8] Dorta-Duque testified that he was concerned that he would lose the benefit of the bargain he had negotiated with Lennar if any of his neighbors filed an appeal or if Lennar itself caused a token appeal to be filed. Lennar's representative testified that Lennar's concern was the delay that any appellate review of the Resolution on the merits would cause.
In an apparent effort to address their respective concerns, the parties incorporated the following definition of appeal into paragraph six of the settlement agreement, which has now become the crux of their dispute:
For purposes of this paragraph, the term appeal shall mean a jurisdictionally sufficient petition for writ of certiorari that is filed in accordance with the Florida Rules of Appellate Procedure which causes the Circuit Court to issue an order to show cause.
Dorta-Duque took comfort in this language because, as explained to him, it meant that even with the filing of a petition for writ of certiorari accompanied with the proper appendix and transcript, the court would still have the authority to decide whether to advance the case forward.[9] Lennar took comfort in this language because it meant that Lennar would contractually be obligated to perform under the agreement with Dorta-Duque unless the Circuit Court Appellate Division reviewed the Resolution on the merits.[10]
Thus, both Dorta-Duque and Lennar crafted this definition of "appeal" in paragraph *885 six to ensure that Lennar would contractually be obligated to perform under the agreement unless the Resolution was reviewed on the merits by the Appellate Division.
Although it cannot possibly be disputed that the Resolution was in fact reviewed on the merits by the Appellate Division, the trial court (and now the majority of this panel) concluded that Lennar is nevertheless obligated to perform under the settlement agreement. Their reasoning appears to be, among other things, that Lennar was not excused from its performance because "no jurisdictionally sufficient petition for writ of certiorari was filed prior to the expiration of the applicable appeal period which, in turn, caused the Circuit Court to issue an order to show cause." See Op. at ___. With all due respect, such a holding is not only legally erroneous, but is logically irreconcilable with the decision of the Circuit Court Appellate Division.

D. ANALYSIS
Initially, I am constrained to point out a fundamental misunderstanding about the Circuit, Court's appellate certiorari jurisdiction to review the County's Resolution that has unfortunately permeated these proceedings from the inception of the settlement agreement up to, and including, this appeal. Throughout this entire proceeding, everyone involved has assumed that the Appellate Division's certiorari jurisdiction was discretionary in nature and that the issuance of the show cause order was a prerequisite for the court to entertain a review of the Resolution on the merits. Both such assumptions are incorrect as a matter of law.
The County's adoption of the subject Resolution, which approved Diaz's request for a zoning change, was quasi-judicial in nature. See Bd. of County Comm'rs of Brevard County v. Snyder, 627 So.2d 469, 474 (Fla.1993); Parker Family Trust v. City of Jacksonville, 804 So.2d 493, 497 (Fla. 1st DCA 2001). See also Am. Riviera Real Estate Co. v. City of Miami Beach, 735 So.2d 527, 527 (Fla. 3d DCA 1999); Grace v. Town of Palm Beach, 656 So.2d 945, 946 (Fla. 4th DCA 1995). As a result, pursuant to Florida Rule of Appellate Procedure 9.190(b)(3)[11], which governs *886 the proceedings below, the decision was reviewable by petition for writ of certiorari as a matter of right in the Circuit Court. "Although termed `certiorari' review, review at this level is not discretionary but rather is a matter of right and is akin in many respects to a plenary appeal." Fla. Power & Light Co. v. City of Dania, 761 So.2d 1089, 1092 (Fla.2000); City of Deerfield Beach v. Vaillant, 419 So.2d 624, 626 (Fla.1982). See, e.g., Haines City Cmty. Dev. v. Heggs, 658 So.2d 523, 530 (Fla.1995) ("in other words, in such review the circuit court functions as an appellate court and, among other things, is not entitled to reweigh the evidence or substitute its judgment for that of the agency."); see also Philip J. Padovano, Florida Appellate Practice, 161 (2d ed.1997) ("[t]he scope of review is actually more like a plenary appeal."). On this first tier mandatory review, the Circuit Court must determine (1) whether procedural due process has been afforded; (2) whether the essential requirements of law have been observed; and (3) whether competent substantial evidence supports the commission's judgment. Vaillant, 419 So.2d at 626.[12]
Thus, because certiorari review of the Resolution by the Appellate Division was not discretionary but mandatory, no order to show cause would ever be necessary or issued for that Court to review it on its merits. This critical principle was overlooked by the parties and their counsel in drafting the settlement agreement, the trial court below, and my colleagues in the majority on this appeal.
The language in the settlement agreement that defined a jurisdictionally sufficient petition for writ of certiorari as "one that causes the court to issue an order to show cause," therefore, had no legal effect. That is, once the remaining property owners timely filed their notice of appeal, which the court was authorized to properly treat as a timely filed petition for writ of certiorari, the court was obligated to conduct a plenary review of the Resolution on the merits. The court had no discretion to do otherwise.
It is clear both from the language of the settlement agreement and testimony of the parties themselves that Lennar's obligation to Dorta-Duque under the agreement was contingent upon there being no certiorari review on the merits of the Resolution. In drafting this agreement, however, the parties mistakenly believed that the issuance of an order to show cause was a prerequisite for the court to review the Resolution on the merits. Notwithstanding their mistake, the very contingency that excused Lennar's performance under the agreement actually materialized. On certiorari review, the Appellate Division reviewed and denied the County's Resolution on the merits and denied the petition. Even Dorta-Duque's own appellate expert at the trial below, to his credit, correctly conceded this fact.[13]
*887 The majority opinion's holding that Lennar was not excused from performance under the settlement agreement because "no jurisdictionally sufficient petition for writ of certiorari was filed prior to the expiration of the applicable appeal" respectfully makes absolutely no sense. If no "jurisdictionally sufficient petition for writ of certiorari was timely filed," on what authority then did the Circuit Court Appellate Division act to review and deny the Resolution on the merits? This is a question that the majority opinion leaves unanswered. Indeed, no one has ever asserted that the decision of the Circuit Court Appellate Division was a legal nullity.
In sum, once the notice of appeal was filed and the Circuit Court Appellate Division properly proceeded to review the County's Resolution on the merits by way of certiorari review, Lennar's contractual obligations to Dorta-Duque were extinguished. For all the foregoing reasons, the trial court's final judgment must be reversed and remanded with instructions to enter final judgment in favor of Lennar
NOTES
[1] Without citing any authority, the dissent states that because certiorari review by the Appellate Division was mandatory, no order to show cause would ever be necessary to review the Resolution on its merits. The dissent then concludes that in drafting the settlement agreement, "the parties mistakenly believed that the issuance of an order to show cause was a prerequisite for the court to review the Resolution, on the merits." See infra p. 886. If the dissent is correct, this would then be a case of mutual mistake. Had Lennar Homes ever claimed at any point mutual mistake in the execution of the contract, the proper procedure would have been for Lennar to seek rescission or reformation of the Settlement Agreement. Providence Square Ass'n, Inc. v. Biancardi, 507 So.2d 1366, 1369-70 (Fla.1987) ("A court of equity has the power to reform a written instrument where, due to a mutual mistake, the instrument as drawn does not accurately express the true intention or agreement of the parties to the instrument. . . . Notably, in reforming a written instrument, an equity court in no way alters the agreement of the parties. Instead, the reformation only corrects the defective written instrument so that it accurately reflects the true terms of the agreement actually reached.") (citations omitted); Barber v. Barber, 878 So.2d 449, 451 (Fla. 3d DCA 2004). A review of the record does not indicate that Lennar ever made such a claim in the trial court nor did Lennar raise this issue on appeal. Courts may not rewrite or add to the terms of a written agreement between parties. Jacobs v. Petrino, 351 So.2d 1036, 1039 (Fla. 4th DCA 1976). The trial court properly refused to do so when it concluded that the Settlement Agreement explicitly required a jurisdictionally sufficient petition for writ of certiorari. Instead, only a notice of appeal. was filed. Furthermore, the Agreement required an order to show cause to be issued by the court. An order to show cause was never issued.
[1] It is undisputed that the zoning approval became final, the appeals were exhausted and that Lennar and/or Silver Palm purchased the property.
[2] The thirtieth (30th) day fell on Sunday, January 18, 2004, and the following Monday, January 19, 2004, was a legal holiday.
[3] The other named defendant, Silver Palm Holdings of Homestead, LLC, is a successor or assign under the Settlement Agreement, and Lennar admits that Silver Palm is now the record title holder of the buffer property at issue in the Settlement Agreement. Throughout this order, the court refers to Silver Palm Holdings and Lennar collectively as "Lerman"
[4] This property was referred to as "buffer property" and was located immediately adjacent to Dorta-Duque's property.
[5] Lennar does not contend that any other action at law or equity was filed nor is there any evidence that such an action was filed.
[6] Rule 9.100(g), Fla. R.App. P. provides the requirements for a petition as follows: The caption shall contain the name of the court and the name and designation of all parties on each side. The petition shall not exceed 50 pages in length and shall contain (1) the basis for invoking the jurisdiction of the court; (2) the facts on which the petitioner relies; (3) the nature of the relief sought; and (4) argument in support of the petition and appropriate citations of authority. [Emphasis added]. It is undisputed that the notice of appeal sub judice did not comply with the requirements of Rule 9.100(g).
[7] The parties filed and argued cross motions for summary judgment and have taken the position that there are no material issues of disputed fact. Both parties agreed that the outcome of this case was to be decided by simply determining the meaning of paragraph 6 of the settlement agreement. Unfortunately, both parties interpret that paragraph differently and so, a predecessor judge denied the motions. This court considers the language in paragraph 6 of the settlement agreement to be clear and unambiguous and compels a final judgment in favor of Plaintiff and that the interpretation suggested by Lennar is not reasonable. However, Floyd v. Homes Beautiful Const. Co., 710 So.2d 177 (Fla. 1st DCA 1998), precludes the entry of a summary judgment in this situation and, thus, this court has considered parol evidence. See also, Mariner Cay Property Owner's Ass'n, Inc. v. Topside Marina, Inc., 714 So.2d 1130 (Fla. 4th DCA 1998); Miller v. Kase, 789 So.2d 1095 (Fla. 4th DCA 2001); Royal Am. Realty, Inc. v. Bank of Palm Beach & Trust Co., 215 So.2d 336 (Fla. 4th DCA 1968).
[8] Mr. Mayol testified that on January 16, 2004, he was aware that other property owners were threatening to file an appeal. Mr. Dorta-Duque testified similarly and stated he did not believe others were in a position to timely file a jurisdictionally sufficient petition for writ of certiorari and that he believed they would file a notice of appeal and so the settlement agreement was drafted to require more than the filing of a notice of appeal in order to excuse Lennar from performing.
[9] It is noteworthy that only a weekend and a legal holiday separated the day on which the settlement agreement was reached (Friday) and the expiration of the appeal period.
[10] See Nelson v. City of Sneads, Fl., 921 So.2d 760 (Fla. 1st DCA 2006); Van Meter v. Kelsey, 91 So.2d 327 (Fla.1956); and McIlmoil v. McIlmoil, 784 So.2d 557 (Fla. 1st DCA 2001).
[11] Lennar did not plead this affirmative defense but the court granted Lennar's ore tenus motion for leave to amend at the close of the case.
[12] Leopold v. Kimball Hill Homes, Florida, Inc., 842 So.2d 133, 136 (Fla. 2nd DCA 2003) ("In deciding whether there has been a meeting of the minds, courts look not to the agreement of two minds in one intention, but on the agreement of two sets of external signsnot on the parties having meant the same thing but on their having said the same thing").
[13] Lennar did not plead this affirmative defense either, but the court granted Lennar's ore tenus motion for leave to amend at the close of the case.
[14] Boymer v. Birmelin, 227 So.2d 358, 362 (Fla. 3rd DCA 1969) ("It is well recognized that forbearance to enforce a legal right may constitute consideration for a promise." "Consideration is supplied when the circumstances are such that it is reasonable to infer that forbearance was desired and sought by the promisor and forbearance by the promise follows").
[15] Trial transcript Day one at page 212.
[16] Trial transcript Day two at page 18.
[17] The court notes that paragraph eight of the Settlement Agreement expressly provided that the parties "shall have the right to seek any and all remedies available at law or in equity."
[18] Bell v. Alsip, 435 So.2d 840 (Fla. 4th DCA 1983) (pointing out that real estate is unique and reversing for entry of specific performance),
[19] Trial transcript Day one at pages 111-112.
[2] The first penalty provision, which commenced on February 1, 2004, required Lennar to pay Diaz monthly increasing interest payments on the purchase price. The second penalty provision, which commenced on April 1, 2004, provided that the purchase price for the transaction would increase monthly by an amount equal to 200 times the total number of approved homesites.
[3] The thirtieth day was actually January 19, 2004, but since that was a legal holiday, the deadline was extended until January 20, 2004.
[4] The other pro se appellants later signed an amended notice of appeal.
[5] Fla. R.App. P. 9.190(b)(3); Bd. of County Comm'rs of Brevard County v. Snyder, 627 So.2d 469, 474, (FIa.1993); Dade County v. Marca, S.A., 326 So.2d 183 (Fla.1976); Teston v. City of Tampa, 143 So.2d 473, 476 (Fla. 1962); Grace v. Town of Palm Beach, 656 So.2d 945, 946 (Fla. 4th DCA 1995); City of Ft. Pierce v. Dickerson, 588 So.2d 1080, 1081-82 (Fla. 4th DCA 1991); Walgreen Co. v. Polk County, 524 So.2d 1119, 1120 (Fla. 2d DCA 1988).
[6] Ironically, the trial judge below was a member of this appellate panel.
[7] Dorta-Duque, however, did have access to his appellate counsel, Kent Robbins, Esq., via speaker phone during these negotiations.
[8] Dorta-Duque acknowledged that his appellate counsel, Mr. Robbins, had informed him of this fact:

[Q] That day when you signed the deal, did you know from any source that the Court had the authority to turn that notice into appeal, that you knew it would be filed into a petition for writ of certiorari? Did you know that?
[A] Mr. Robbins had warned me of the fact, yes.
[Q] He did? He told you that before you signed the deal?
[A] Yes.
[9] Dorta-Duque testified as follows:

[Q] and why are you so sure? What recollection to you have?
[A] I remember him explaining what that meant and how that would help me.
[Q] And that's not something that came from Kent. Robbins or Mr. Starkman?
[A] Not that I recall sir.
[Q] And how did he tell that language would help?
[A] He explained that it wasn't just the filing of a writ of certiorari that would make this contact void, but it went further to explain that even if that had been filed on time with the proper appendix and transcripts, that it would still take a judge to order a certain thing.
. . . .
[Q] I think you indicated either yesterday or earlier that you just didn't want simply a piece of paper to be file, is that correct, and to stop Lennar's obligation under the deal?
[A] Yes.
[10] Lennar's representative, Mr. Seijas, testified as follows:

[Q] Now, it says subject to and conditioned uponthat Lennar's obligations, were subject to and conditioned upon. Was this a critical term of the settlement agreement for you, this term?
[A] I mean, it really was the heart of the agreement. For us the issue was is [sic] that there would not be an appeal. It would move forward within the courts and it would not be filed by anyone because, again, a delay was a delay.
. . . .
[Q] Well, let me ask you, when the "by anyone" was added, other than what you just testified to, was there any concern that he expressed to you that led to any other changes that he expressed to you and changes in the agreement?
[A] Well, yeah. And then at that point, again, I think there was a little bit of mistrust on both sides. His concern and he expressed back was that, yeah, but I have to make sure that you guys don't file some kind of piece of paper or anything, just an appeal that, doesn't move forward, that isn't heard, just to try to get out of this deal. So we have to make sure that this is a real appeal and that basically was what created that dialogue.
[Q] You became aware that a definition now of appeal was put in the settlement agreement? Were you aware of that?
[A] Yes. I remember that day Juan and Starkman working together, putting together some language, that would make it such that it was a situation where an appeal was filed and went and move forward and then through the courts, something that was a real delay to Lennar.
. . . .
[Q] Yesterday, Mr. Mayoland you were heretestified that at the time he was negotiating the settlement agreement on behalf of Lennar, that he might not have been as familiar with the Florida Rules of Appellate Procedure as well as he thought he was.
Now, there was nothing that prevented Lennar or Mr. Mayol from consulting with an appellate attorney during the course of negotiations of that settlement agreement, correct?
[A] Correct. I can tell you that we were all there discussing the intent of the agreement which the intent of the agreement was that if an appeal was filed and went through the process of the courts, that we no longerby anyonethat we no longer had the obligation to sell the property to Mr. Dorta-Duque, that the fact is that neither Mr. Mayol nor Mr. Starkman, neither one of them were, as you call, experts in appellate law or whatever that may be. But everyone was working together in what I thought was good faith to put on paper the agreement that Manny and I had said.
[11] Rule 9.190(b)(3) provides that "[r]eview of quasi-judicial decisions of an administrative body, agency, board, or commission not subject to the Administrative Procedure Act shall be commenced by filing a petition for certiorari in accordance with rules 9.100(b) and (c), unless judicial review by appeal is provided by general law." This. Rule does not reference the order to show cause provision in Rule 9.100(h) because it is inapplicable to the review of quasi-judicial decisions not subject to the Administrative Procedure Act.
[12] In contrast, on a "second tier" certiorari petition before the district court, that court is limited to determining whether procedural due process has been afforded and whether the circuit court applied the correct law. See Vaillant, 419 So.2d at 626. It is not allowed to determine whether the commission's decision was wrong as a matter of law.
[13] Dorta-Duque's expert witness, Joel Perwin, a prominent appellate attorney, testified:

[Q] My question was, Mr. Perwinagain, if my question is unclear, I apologize. My question was did the appellate division consider the merits of the petition for certiorari in this case?
[A] Yes.